(9 Misc. Rep. 607.)

PEOPLE ex rel. SHAND v. TIGHE, Police Justice.

(Supreme Court, Special Term, Kings County. August, 1894.)

1. DUE PROCESS OF LAW—KILLING VICIOUS DOGS.
    A city ordinance which provides that, if a dog attacks a person, a police justice may, on complaint made, order the owner to kill the dog immediately, and impose a fine for failure to obey the order, but which does not require that notice and an opportunity to be heard shall be given to the owner, is void under Const. art. 1, § 6, providing that no person shall be deprived of property without due process of law.[1]

2. PROPERTY—DOGS.
    In New York a dog is property.

Petition by William Shand for a writ of prohibition commanding James G. Tighe, a police justice, to desist from prosecuting relator for refusal to obey an order commanding him to kill his dog. Granted.

H. F. Koepke, for relator.
D. F. Ayres, for respondent.

GAYNOR, J. The charter of Brooklyn empowers the common council to enact ordinances to regulate and license a variety of occupations, places, and things, including "common shows and dogs." Claiming to act in pursuance of and within this power to legislate

[1] See note at end of case.

thus conferred upon it by the state legislature, the common council, many years ago, passed an ordinance that if any dog shall "attack a person" at any place except on the premises of his owner, upon a complaint being made to the mayor or a police justice, he shall inquire into the complaint; "and if satisfied of its truth, and that such dog is dangerous, he shall order the owner or possessor of such dog to kill him immediately;" and, if the owner refuses to obey the order within 48 hours, he shall forfeit $10, and also $5 more every 48 hours thereafter until the dog is killed. A police justice having ordered the relator to kill his dog under this ordinance, and the relator having refused to obey, the police justice has now brought the relator before him on a warrant, and is proceeding to enforce the prescribed penalty. This court is asked to issue a writ of prohibition in the name of the people commanding the police justice to desist. By the return of the proceedings to this court, it appears that one Thomas Croke made a written complaint to the justice that the dog bit him on a public street. It will be observed that the ordinance only professed to confer jurisdiction on a justice to act in a case where a dog "attacks a person." The complaint alleges no attack by the dog, and, when I come to read the evidence given by Croke upon the examination in the proceedings against the owner, I find that he swears that the dog was on the street with the owner's boy, and that, to use his exact words, "I got hold of the boy, and the dog bit me;" so that, instead of the dog making an attack, Croke seems to have attacked the boy, and the dog defended him. No complaint being made to the justice that the dog had made an attack, he was without jurisdiction to do anything in the matter, conceding the ordinance to be valid. But, furthermore, the justice proceeded under the complaint, gave judgment against the dog, and ordered his owner to kill him, without having given any notice of hearing, and opportunity to be heard, thereunder to the owner. Property may not be taken, affected, or destroyed except by due process of law, which requires notice of hearing to the owner and opportunity to be heard. State Const. art. 1, § 6; Stuart v. Palmer, 74 N. Y. 183. Under the common law of England, a dog was not property. It was not larceny to steal a dog, though it was larceny to steal a dead dog's hide. But the world moves, and these crudities no longer exist, and in this state a dog is property. Mullaly v. People, 86 N. Y. 365. The dog, from the beginning, has been the friend and solace of man; and the law has only recognized the testimony of human nature, history, and poetry in withdrawing him from outlawry. 2 Mot. Dutch Repub. 398; Odyssey, b. 17; 7 Moore's Byron, 292. It may be well to remember in excuse of the courts, however, that, when they declared that a dog was not property, it was in order to decide that it was not larceny to steal him, for the prescribed punishment at that time for larceny of property of the value of 12 pence or more was death, and they thought it not fit that a man should die for a dog. Co. Inst. (3d Ed.) 109 et seq. And yet it was larceny to steal a tame hawk, and, as I have said, a dog's hide. But, trying to forget these oddities, suffice it

that a dog is property in the fullest sense in this state; and therefore the order of the justice to kill this dog was absolutely void, because he gave judgment without a hearing, and, as has been seen, that is no judgment at all, and can affect nothing and nobody. It follows, of course, that the justice has no jurisdiction to punish the owner for not having obeyed this void order of judgment. As to the ordinance itself, it is one of those absurdities which we often encounter. It is void. It professes to authorize judgment without the constitutional requirement of a judicial hearing upon due notice (74 N. Y., supra); and, besides, I do not find any authority going so far as to suggest that a statute authorizing a common council to pass an ordinance to "regulate and license" dogs or swine or cows confers power to pass an ordinance to kill them. The common law is that a ferocious or dangerous dog running at large in a public street is a public nuisance, and may be killed by any one. The intervention of a police justice is wholly unnecessary. This ordinance is a fair sample of too much law and government, like many others enacted in Brooklyn, one of which is that no householder shall allow his chimney to take fire. I think it proper to say that I do not see that the police justice is open to blame. He only did what has been done by his predecessors for a long time.

Let the writ issue.

### NOTE.

In Jenkins v. Ballantyne (Utah) 30 Pac. 760, it was held that the provisions of the charter and ordinances of Ogden City authorizing the destruction, without resort to judicial proceedings, of dogs running at large without having been registered, as required thereby, and without wearing a collar with the name of the owner and the number of the registration certificate marked thereon, are not in conflict with Const. U. S. amend. 5, providing that no person shall be deprived of property without due process of law, but are a valid police regulation.

In Julienne v. Mayor, etc. (Miss.) 10 South. 43, it was held that a dog may lawfully be killed by a police officer when running at large, contrary to an ordinance ordering all dogs confined, though it had just escaped, and was being pursued by the owner to return it to confinement; and that summary proceedings, of the most stringent character, for the destruction of dogs kept contrary to municipal regulations, are entirely within legislative power.

See, also, State v. City of Topeka (Kan.) 12 Pac. 310; Blair v. Forehand, 100 Mass. 136; Morey v. Brown, 42 N. H. 373.